BRACKOB, Respondent, vs. BRACKOB, Appellant.

*December 3—December 30, 1953.*

514

516

For the appellant there were briefs by *Eberlein & Eberlein* of Shawano, and oral argument by *Michael G. Eberlein, Jr.*

For the respondent there was a brief by *Lloyd G. Andrews* and *Larson, Andrews & Milsap,* all of Shawano, and oral argument by *Lloyd G. Andrews.*

CURRIE, J.   Counsel for the defendant husband raise the following issues on this appeal:

(1) That the trial court, in computing the net estate of the parties, should have determined the amount of defendant's debts and the equity in the cash surrender value of his life insurance as of the date of the "second trial" instead of making such determination as of the date of the conclusion of the first trial approximately one year earlier.

(2) That if such debts and cash surrender value of life insurance were to be determined as of the conclusion of the first trial on December 6, 1951, then the defendant should have been awarded an increased percentage of the total net estate by reason of debts which he had incurred during the year intervening between the two trials.

(3) That the trial court awarded an excessive amount as support money for the minor children and alimony for the plaintiff wife.

(4) That the trial court abused its discretion in ordering payment of support money to each child until he or she had arrived at the age of twenty-one, or completed his or her formal education, whichever should first occur.

(5) That the additional award of $150 attorneys' fees to the wife's attorneys, and $250 attorneys' fees and suit money on the appeal, were excessive considering that the husband had already paid plaintiff's attorneys' fees and suit money in the sum of $750 for legal services rendered at the first trial and on the first appeal.

The first two of the above five contentions will be considered together.

At the conclusion of the original trial on December 6, 1951, the court from the bench granted a divorce to the plaintiff upon her complaint. The judgment of divorce, therefore, was effective as of that date. *Zahorka v. Geith* (1906), 129 Wis. 498, 109 N. W. 552. In the absence of any exceptional intervening circumstances occurring in the meantime, such date of the granting of the divorce would be the proper time as of which to determine the value of the estate of the parties upon which to base the division of property.

The court awarded to the defendant husband, as part of his share of the division of property, the $2,700 cash on hand and life insurance policies having a cash surrender value of $1,148. As against the $2,700 cash on hand, the court deducted debts of the defendant in the sum of $1,579.79, thereby finding the net value of the cash on hand to be $1,120.21. Defendant does not dispute that $1,120.21 was the net value of the cash on hand, and $1,148 was the cash surrender value of his life insurance, as of December 6, 1951, but contends that there should be deducted from said values additional debts incurred by him in the ensuing year. Such additional debts consist of $825 which the defendant borrowed from his mother during 1952, and $1,250 which he borrowed on his life insurance under date of March 31, 1952. Defendant paid the total sum of $3,650 support money and alimony during the year period of December 1, 1951, to November 30, 1952, and, as will be hereinafter pointed out, his income in 1952 was sufficient to permit him to make such payment without the necessity of borrowing money to do so if he had practiced proper economies. Therefore, the facts that defendant lived on a scale beyond his means, or spent money in support of his mother and sister whom he was not obligated to support, thereby necessitating that he

borrow money from his mother and the life insurance company, do not afford a justifiable basis for the trial court taking such additional debts into consideration in making the division of property.

By our prior decision on the first appeal we indicated that any division to the wife not exceeding 50 per cent of the net value of the total estate would not be an abuse of discretion by the trial court, and the subsequent division made by the trial court in the judgment now appealed from does not award to the wife more than 50 per cent of such net estate, and therefore will not be disturbed on this appeal.

We now turn to the contention made by the defendant that the trial court in the judgment and order appealed from has required the defendant to pay an excessive amount for the support of his three children and as alimony to the plaintiff wife. The total annual amount that the defendant is required so to pay is $5,700 per year. In referring to the matter of the amount of support money and alimony that the defendant husband should be required to pay, this court, in its opinion on the first appeal, declared (p. 208):

"The matter should be further studied in the court below with a view of determining the exact needs of the wife and children and the extent of the husband's income, which are the underlying factors in determining what allowance of alimony and support money shall be granted."

Approaching the question from the standpoint of the needs of the children and wife, we find that during the year period beginning December 1, 1951, and ending November 30, 1952, the wife actually spent in cash the sum of $3,327.38 as living expenses for herself and three minor children including the maintenance of the home, and in addition incurred $651.14 of unpaid bills for this purpose. The plaintiff also

did not pay the 1952 taxes on the homestead amounting to $316.20. If we add to the $3,327.38 actually expended by the wife during said year the said sum of $651.14 of debts and $316.20 for taxes we have a total of $4,294.72 as the amount required for the support of the wife and three children for a one-year period. Included among plaintiff's expenditures for said year period was the sum of $173.95 for maid help and baby sitting. We are satisfied that the sum of $4,200 per year would adequately meet the needs for support of the plaintiff wife and three children.

We will now consider the question of support money and alimony from the standpoint of the husband's ability to pay. His occupation for some years has been that of a salesman for a wholesale jewelry-manufacturing company. His work requires that about three fourths of each year be spent away from home traveling his territory. Defendant is a veteran of World War II and injured his leg while bailing out of a plane over Germany, and was taken prisoner by the Germans. He has a permanent disability to his leg as a result of such injury and receives $38.50 per month disability pension from the government, or $462 per year. This income of $462 per year is nontaxable and not reported in defendant's income-tax returns. At the hearing for taking of additional evidence held December 19 and 20, 1952, the defendant produced records showing his actual income and disbursements for the first eleven months of 1952. Subsequent to such hearing, and prior to the rendering of the memorandum decision by the trial court, a true copy of his 1952 federal income-tax return was filed with the court and considered by the court in fixing the amount of support money and alimony awarded. The following table consists of data taken from such income-tax return, except for also taking into consideration the amount received for disability pension:

| | |
|---|---:|
| Gross income for 1952 as shown by income-tax return | $21,104.86 |
| Business expenses and other deductions | 15,425.72 |
| Net income | $ 5,679.14 |
| Alimony deduction taken | 250.00 |
| Interest on mortgage on home paid by defendant | 214.50* |
| | $ 6,143.64 |
| Less income tax paid on 1952 income | 702.92 |
| | $ 5,440.72 |
| Disability pension | 462.00 |
| | $ 5,902.72 |

*$196.57 of this interest item was included in the $1,579.79 of debts the trial court found were owing on December 6, 1951, and is a nonrecurring item.

The above amount of $5,902.72 is the amount available to defendant with which to pay support money and alimony for the support of the plaintiff wife and the three minor children of the parties, and his own living expenses while not traveling on the road, if all the deductions taken on the income-tax return were legitimate. However, defendant's living expenses for the two hundred eighty days of each year, during which he travels in carrying on his sales efforts, were deducted from his gross income in his income-tax return, and were included in the figure of $15,425.72 of deductions shown in the above table. At the time of the additional hearing in December, 1952, defendant brought into court vouchers which he testified substantiated all of the deductions taken on his income-tax return, but counsel for plaintiff saw fit not to cross-examine defendant with respect to the same. We, therefore, assume that defendant actually spent all the

amounts shown as deductions in his return, except the amount claimed as depreciation on his automobile.

If the defendant should be required to pay a total of $4,200 per year support money and alimony, he would have left but the sum of $1,702.72 for his own personal use to meet his own requirements. The defendant maintains an apartment in Detroit to which he returns when he is not on the road, and in which he keeps his belongings while traveling, for which he pays a rental of $97.50 per month. He submitted a budget of $469.81 per month covering his estimated necessary expenditures, including his apartment rent. Included in such monthly total is $90 for the support of his mother and sister, the latter being in ill-health. However, the mother has $8,000 worth of property of her own and, as the trial court rightly points out in its memorandum decision, there is no obligation under such circumstances for the defendant to support her. The sister is divorced and she should be looking to her former husband instead of her brother for support. In any event, defendant's first obligation is to support his former wife and children rather than an adult sister.

Certain other listed expenditures in such budget prepared by the defendant also seem high, such as, for example, $48 per month for dry cleaning and laundry, and $41.66 per month for clothes, although defendant's business does necessarily require him to dress well. Upon examining the deductions taken by defendant in his 1952 income-tax return we find he spent $1,960 for meals and $1,874.60 for hotel lodging during the two hundred eighty days he was traveling on the road. This averages $7 per day for meals and $6.75 per day for lodging. In spite of the high cost of travel these days we are sure the defendant by practicing a little economy could cut these expenditures to some extent. Nine tenths of $1,091.59, or $982.43, was deducted for automobile depreciation, the defendant estimating that he used his car 90 per cent for business purposes. While the government may

allow such a deduction as depreciation, we believe such figure is higher than the actual depreciation by probably one third. Although depreciation is a noncash item, it, nevertheless, is a proper deduction in determining defendant's ability to pay alimony and support money because he of necessity will have to replace his automobile. In 1950, defendant expended $1,676 as entertainment and promotional expense while in 1952 the expenditure for such purpose jumped to $5,462.43, his gross income in 1952 being approximately $2,300 higher than in 1950. No doubt it was necessary to spend more for entertainment and promotional expense in 1952 than in 1950, in order for the defendant to secure the gross sales that he did, due to change in business conditions, but nevertheless, we believe that defendant could have reduced the amount so expended for such purpose in 1952 to a considerable extent without materially affecting his gross income.

We are therefore not at all satisfied that if defendant were required to pay a total of $4,200 support money and alimony that he would have available but $1,702.72 for his own living expenses and other requirements, assuming that his gross income continues to be the same as it was in 1952. We do consider, however, that $4,200 per year is the maximum the defendant's income will permit him to pay for support money and alimony, and that the $5,700 ordered by the trial court is excessive. In order to effect a reduction in the total sum defendant is required to pay for such purpose from $5,700 to $4,200 per year, it will be necessary that the alimony to the wife be reduced from $250 to $125 per month.

Defendant further maintains that it was an abuse of discretion for the trial court to order the support money for each child continued "until each child reaches the age of twenty-one years, respectively, or completes his formal education—whichever event sooner occurs." The three children were born, respectively, July 3, 1944, May 7, 1946, and

January 29, 1949. Sec. 247.24, Stats., provides that the court in rendering a judgment for divorce "may make such further provisions therein as it shall deem just and proper concerning the care, custody, maintenance, and education of the minor children of the parties." Under the wording of the statute, we conclude that there was no abuse of discretion on the part of the court in requiring defendant to pay support money for each child until the child reaches twenty-one, or his or her formal education is completed, whichever first occurs. The income of the defendant is such that he should be required to provide further education beyond high school for his children up to the time that they arrive at the age of twenty-one, if such children are desirous of taking advantage thereof.

The last point raised by defendant is that there was an abuse of discretion on the part of the trial court in ordering him to pay an additional $400 of attorneys' fees and suit money to plaintiff in view of the large amount he was previously required to pay for such purpose. The reasonableness of the prior attorneys' fees were passed upon by this court on the former appeal, and the question of the reasonableness of the $400 additional amount which the defendant has been subsequently ordered to pay should therefore be considered independently of said prior amount. We consider an allowance of an additional $150 to cover attorneys' fees for the two days of trial taking place on December 19 and 20, 1952, and $250 attorneys' fees and suit money for defending this appeal, to be reasonable. Therefore, there was no abuse of discretion on the part of the trial court in ordering payment of said additional amounts.

*By the Court.*—The judgment and order appealed from are modified so as to reduce the alimony payable by defendant to plaintiff from $250 per month to $125 per month, and,

as so modified, said judgment and order are affirmed. Neither party to have costs on this appeal. Appellant to pay clerk's fees.