HIRMER, Respondent, v. HIRMER, Appellant.

*April 7—May 3, 1960.*

For the appellant there were briefs and oral argument by *Erwin E. Nemmers* of Milwaukee.

For the respondent there was a brief by *Howard & Burns*, attorneys, and *George A. Burns, Jr.*, of counsel, all of Milwaukee, and oral argument by *George A. Burns, Jr.*

DIETERICH, J.  The judgment in this case granted a limited divorce from bed and board to the plaintiff and awarded permanent alimony to the plaintiff in the sum of $225 per month and $100 per month for each of the parties' two minor children, and in accordance with a stipulation entered into between the parties concerning the value of those items comprising the estate of Ambrose M. Hirmer, the defendant, the court further determined in accordance with the stipulation that after deducting the sum of $4,000 paid to Michael Hirmer, the defendant's father, the net estate of the defendant for the purposes of determination of the division and distribution of his estate is $42,166.58.  The court ordered the defendant Ambrose M. Hirmer to pay to the plaintiff Mildred C. Hirmer, the sum of $14,155 as and for a full and final division of his estate.  This figure represented one third of the net distributable estate and was awarded to the plaintiff in the following manner:

1. Advance already made to the plaintiff pursuant to court order in November, 1959....$ 1,125
2. All of the household furnishings.......... 750
3. Hammond organ..................... 1,500
4. Balance to be paid in case to plaintiff out of proceeds (net) forthwith from the sale of the parties' residence located in Brookfield, Wisconsin, at such time as the sale is consummated .......................... 10,780

$14,155

The judgment further provided for the immediate sale of the residence of the parties located at 650 South Sunny Slope road, Brookfield, Wisconsin, in order to allow for the immediate liquidation of defendant's estate.  It further

provided that the sum of $900 be paid by Ambrose M. Hirmer to the law firm of Howard & Burns, attorneys for the plaintiff, as a contribution toward her attorneys' fees, but allowed a credit of $200 already paid to said attorneys, and provided that the balance of $700 be paid to the attorneys within thirty days from the entry of judgment. It further provided for the payment of taxable costs.

Plaintiff and defendant were represented during the trial by able and capable attorneys. The defendant retained new counsel after the divorce had been fully litigated and judgment entered.

On September 21, 1959, defendant applied for a stay of execution of the judgment entered on September 9, 1959, until final decision of the appeal to the supreme court.

On October 12, 1959, after hearing, the trial court entered the following order:

"It is ordered that the judgment in this action, made and entered in the circuit court for Waukesha county on September 9, 1959, granting to the plaintiff, Mildred C. Hirmer, judgment of divorce from bed and board be and it is hereby stayed pending an appeal to the Wisconsin supreme court upon the following terms and conditions:

"a. That the defendant, Ambrose M. Hirmer, shall pay to the plaintiff forthwith the sum of $425 each month as and for permanent alimony and support of the parties' two minor children pending this appeal; said payments to commence on the 23d day of July, 1959, and shall be due and payable on the 23d day of each month thereafter; provided further however that the defendant shall be allowed a credit of $827.49, which figure represents moneys the defendant has actually paid out in compliance with the original order made and entered by Court Commissioner Leon L. Brenner, in December, 1957, pending the trial of this action. That the *nunc pro tunc* order made herein so far as it relates to the payment of alimony and support is incorporated herein as an express condition to stay the judgment in this action, and the moneys found to be due and owing the plaintiff after allowing the defendant credit as aforesaid, shall be paid

forthwith out of the moneys now on deposit to his credit or to the joint credit of the defendant and plaintiff at the Mutual Savings & Loan Association, Milwaukee, Wisconsin.

"b. That the defendant shall forthwith list for sale with some reputable realtor the residence of the parties located at 650 South Sunny Slope road, Brookfield, Wisconsin, and the plaintiff shall vacate said premises and find other living quarters within fifteen days from the date the property is listed for sale, but in no event shall she remain in the parties' residence for more than thirty days from the date of the listing of said property. Provided further, however, that when the sale of the parties' home is consummated, the defendant shall forthwith deposit the net proceeds of the sale with the clerk of the circuit court for Waukesha county, or with some other reputable banking institution or savings and loan association, and the defendant shall be restrained and enjoined from withdrawing any of said moneys pending the appeal of this action.

"c. That the defendant, Ambrose M. Hirmer, shall pay forthwith to the law firm of Howard & Burns, the sum of $115.12, which sum represents the costs in this action to the date of trial, to wit, July 17, 1959, in the amount of $65.12 and the sum of $50 as and for costs of this motion.

"d. That the defendant, Ambrose M. Hirmer, shall pay forthwith the sum of $300 to the law firm of Howard & Burns, attorneys for the plaintiff, upon the perfection of his appeal, said moneys representing an allowance for counsel fees and suit moneys to enable the plaintiff to defend said appeal. That the defendant shall pay this money out of any funds now on deposit to his joint or individual credit at the Mutual Savings & Loan Association, Milwaukee, Wisconsin.

"e. That the visitation rights granted to the defendant at the time of trial, and embodied in the judgment, shall be modified pending this appeal, and shall be as follows: The defendant shall be allowed to visit the parties' two minor children each Wednesday afternoon from 3:30 p. m. to 7:30 p. m.; he may visit the children each Saturday from 1 p. m. to 9 p. m. and upon due notice to plaintiff's attorneys of at least two days, the defendant may visit the children once a month on weekends from 9 a. m. on Saturday until 7:30 p. m. on Sunday.

"It is further ordered that the restraining order enjoining and restraining the defendant from withdrawing any funds now on deposit to his credit, either jointly or individually, at the Mutual Savings & Loan Association, Milwaukee, Wisconsin, and which was released by the terms of the judgment made and entered in this action on September 9, 1959, shall be and is hereby reinstated; provided further however, the defendant may withdraw the sum of $448.51 from said institution to comply with the terms of this order so far as it relates to the payment of alimony and support, effective July 23, 1959, the sum of $115.12 to defray costs of this action to date of trial and the costs of this motion, and an additional $300 at such time as the defendant perfects his appeal to the supreme court, . . ."

On October 10, 1959, the defendant made a motion to reconsider judgment and to vacate judgment and dismiss the complaint on the following grounds:

"1. The findings are not supported by the great weight of the evidence.

"2. The findings are incomplete and do not deal with matters of defense raised.

"3. When the findings are corrected to follow the great weight of the evidence, the findings do not support the judgment.

"4. If the corrected findings do not support the judgment, the complaint should be dismissed."

Under date of October 16, 1959, the attorney for the defendant, in support of his motion for a new trial on the minutes stated as follows:

"2. That affiant believes that the court erred in ruling that defendant could not present the testimony of Dr. Andrew Rosenberger, M. D., specialist in psychiatry, to show that plaintiff was and continues to be mentally ill as indicated by the attached photostat of medical opinion which defendant was prepared to present together with other medical testimony. That the court erred in ruling that such testimony could only be introduced in evidence with the consent of

the plaintiff. That the testimony defendant was prepared to present and offered contains the same findings as the law of Wisconsin requires for commitment to a mental institution and upon such commitment the person so committed is legally insane in Wisconsin.

"3. That consequent upon such ruling of the court, defendant was unable to show effectively that plaintiff was in a state of shock at the time your defendant was required to take emergency measures, which measures the court erroneously found to be cruel and inhuman treatment.

"4. That defendant was prepared to and offered to prove that plaintiff was in the times here in question an inmate of a mental hospital, to wit, St. Mary's of the Hill, Milwaukee, Wisconsin, but that the court erroneously ruled that such proof could only be presented with the consent of the plaintiff. That with respect to the proposed medical testimony indicated in paragraphs 1 through 4 above, your defendant sought such consent in open court pursuant to direction of the court and that plaintiff refused to give such consent. That consequent upon such ruling, defendant was unable to show effectively that your defendant was required to take emergency measures, which measures the court erroneously found to be cruel and inhuman treatment in its judgment.

"5. That the court erred in resting a finding of cruel and inhuman treatment upon a single instance when defendant was required to take emergency measures, not to inflict cruelty but to protect the well-being of the plaintiff.

"6. That the court particularly so erred in view of the fact that in the eighteen years of married life of plaintiff and defendant this was a single emergency.

"7. That the court erred in resting a finding of cruel and inhuman treatment upon the fact that on several occasions defendant slapped plaintiff, after plaintiff had used in each instance inflammatory and immoral language such as calling defendant a 's— — of a b— — — —.' That the court erred herein because: (1) The Wisconsin supreme court has ruled that such action is warranted by such provocation. That while the rule in the law of torts between unrelated parties is that no amount of language no matter how offensive can justify a battery, this is not the law of domestic

relations where it is clear that a provoked battery is no offense upon which a finding of cruel and inhuman treatment can be rested when the battery is not out of proportion to the provocation, and (2) regardless of provocation, defendant contends the court erred herein because entirely aside from the grounds specified in (1) just completed, your defendant was acting entirely properly particularly since the parties have children and of impressionable years, and in the orderly upbringing of such children it is required that any violation of good morals should be promptly and justly punished. That failure to so punish offenders, leads children to suspect the double standard and ultimately leads to juvenile delinquency, the curse of our age.

"8. That the court erred in not recognizing the debt due to defendant's employee, a dental hygienist, who is necessary to defendant's occupation. Said debt of $4,032 as of the date of trial covers services performed and without which defendant's income would be greatly reduced as he would perform such services in part in the absence of such assistant, and could not perform other dental operations without such assistance.

"9. That the court erred in not recognizing the accrued interest due on debt of $4,000 owing to defendant's father, while at the same time the court recognized the debt itself.

"10. That the court erred in granting custody of the children to the plaintiff in that, while there is no evidence that plaintiff has mistreated the children, the fact that plaintiff is mentally ill as a matter of law requires that such children should not be in her custody during such illness."

The letter of Dr. Andrew I. Rosenberger reads as follows:

"October 11, 1957.

"To Whom It May Concern:

"Re: Mrs. Mildred Hirmer,
     "650 So. Sunny Slope Rd.
     "Milwaukee 14, Wis.

"The above-named patient has been under my observation since April, 1957.

"She has definite paranoid delusions toward her husband. She will not accept psychotherapy in the office and refuses to enter a private sanitarium.

"I feel that for her own protection, and the protection of her family, Mrs. Hirmer should be placed under mental observation for a period of at least two weeks. It is my feeling that she is in need of active treatment at this time."

In addition thereto, there was an affidavit by Ambrose M. Hirmer, the defendant, in support of the motion which recited facts and attached photostatic copies of purported letters which he claimed in his affidavit constituted newly discovered evidence.

On October 27, 1959, opposing affidavits were filed by the plaintiff in support of her motion to strike from the files that portion of the affidavit of defendant's attorney in support of his motion for a new trial which is contained in paragraphs 2, 3, 4, 5, 6, and 9 of the affidavit and the exhibits attached thereto, and further moved for review of the judgment so as to amend the findings and judgment made and entered in this action to include the following:

"1. That the defendant, Ambrose M. Hirmer, during the course of the trial of this case testified falsely on material issues, and for that reason the court finds that he is not worthy of belief so far as his testimony relates to the plaintiff's contention that he administered physical violence to her person, and his relationship with his office assistant.

"2. That in addition to finding that the defendant administered physical violence to his wife's person on numerous occasions, without legal provocation, the court further finds, as an element of cruelty, that for a protracted period of time prior to the commencement of this action, the defendant's relationship with his office assistant was improper. This finding is predicated upon all the circumstances as testified to by the parties, and the fair inferences to be drawn from them."

There was also the following affidavit by Robert McGraw under date of November 2, 1959:

"1. That affiant is an attorney at law duly licensed to practice in the state of Wisconsin and that he tried the above

matter for defendant on the 17th day of July, 1959, before the Hon. RICHARD W. BARDWELL, circuit judge.

"2. That prior to proceedings in the courtroom proper, your affiant in chambers of the judge and in the presence of attorneys for defendant, did present to the court, Hon. RICHARD W. BARDWELL, the matter of plaintiff's alleged mental illness. Your affiant did this pursuant to the opinion in *Heine v. Witt* (1947), 251 Wis. 157, 166, citing this exact reference to the court. That further your affiant stated his intention to call as defendant's witness Dr. Andrew Rosenberger, M. D., specialist in psychiatry, who had examined plaintiff, for the purpose of presenting evidence as to plaintiff's mental illness, and other medical testimony. That your affiant had Dr. Rosenberger ready and available for this purpose. That the court ruled that defendant could not present such testimony without the consent of plaintiff on the ground that the medical privilege was involved. That affiant contended that the proposed testimony did not fall within the privilege and that in marital cases there was no such privilege applicable to the situation here involved. That the court instructed the defendant that the plaintiff's consent was required. That pursuant thereto, defendant asked for such consent of plaintiff in the trial (as the recorded transcript shows) and the plaintiff denied such consent."

The trial court heard all of the motions on November 6, 1959, and in its order denied all of the motions of the defendant and all of the motions of the plaintiff excepting her motion to amend the findings of fact made in support of the judgment entered September 9, 1959, as set forth in her notice of motion, and it further ordered and allowed the plaintiff to sell the Hammond organ now in her possession and awarded to her by the terms of the judgment, with the proviso that she receive a reasonable price from the sale and on consummation of the sale she deposit proceeds thereof with the clerk of the circuit court for Waukesha county pending final disposition of the action. It further ordered that the defendant, Ambrose M. Hirmer, pay the law firm of

Howard & Burns the sum of $100 as and for contribution toward plaintiff's attorneys' fees on the motions, together with $10 motion costs.

The division of estate and allowance of attorneys' fees and costs are matters within the discretion of the trial court. *Brackob v. Brackob* (1952), 262 Wis. 202, 207, 54 N. W. (2d) 900; *Brackob v. Brackob* (1953), 265 Wis. 513, 61 N. W. (2d) 849; and *Rohm v. Rohm* (1959), 7 Wis. (2d) 431, 96 N. W. (2d) 817.

Pursuant to said order the trial court amended its findings of fact and conclusions of law *nunc pro tunc* on December 1, 1959, as follows:

"5. That the defendant, Ambrose M. Hirmer, during the course of the trial of this case testified falsely on material issues and for that reason the court finds that he is not worthy of belief so far as his testimony relates to the plaintiff's contentions that he administered physical violence to her person, and that his relationship with his office assistant was improper.

"6. That in addition to the finding that the defendant administered physical violence to his wife's person on numerous occasions, without legal provocation, the court further finds that, as an element of cruelty, for a protracted period of time prior to the commencement of this action, the defendant's relationship with his office assistant was improper. This finding is predicated upon all the circumstances as testified to by the parties, and the fair inferences to be drawn from them."

The trial court had the power to make such amendment. *Zahorka v. Geith* (1906), 129 Wis. 498, 109 N. W. 552, and *State ex rel. Attorney General v. Northern Pacific R. Co.* (1914), 157 Wis. 73, 147 N. W. 219.

The record fails to disclose that the defendant ever made an issue as to the sanity of the plaintiff during the course of trial. The *Heine Case* involved a question of fraud and,

therefore, is distinguished from this case, because no fraud is involved. (*Heine v. Witt* (1947), 251 Wis. 157, 28 N. W. (2d) 248.)

The cross-examination of Mrs. Hirmer during the course of the trial reveals the following testimony:

"*Q*. Now, is it true, Mrs. Hirmer, that in the year you commenced this action, 1957, that you consulted professionally with Dr. Andrew Rosenberger of Milwaukee, is that correct? *A*. I consulted . . . both my husband and I consulted with Dr. Rosenberger at the request of the chancery office.

"*Q*. That is correct. Dr. Rosenberger is a psychiatrist, is that correct? *A*. Yes.

"*Q*. You saw Dr. Rosenberger starting on April 16, 1957, is that accurate? *A*. . . . I would have to look up the exact date. It was approximately that.

"*Q*. Is that approximately right? *A*. That is approximately it, yes.

"*Q*. You saw him on several occasions through the month of July, 1957, is that a fair statement? *A*. I saw him exactly four times.

"*Q*. And the last one was in the latter part of July, 1957? *A*. Yes.

"*Q*. Would you be willing to waive the privilege which attaches to the doctor's testimony so as to enable him to testify in this court? *A*. No, I will not.

"*Q*. Did Dr. Rosenberger attempt to give you any advice or treatment? *A*. No, he did not.

"*Q*. Isn't it true he suggested to you that you were in need of additional treatment and you refused to take the same? *A*. That is not true.

"*Q*. And also in the year 1957, Mrs. Hirmer, is it a fact that upon a petition being filed in the county court of Waukesha county that there was a hearing held and as a result of the hearing you voluntarily committed yourself as a patient in St. Mary's Sanitarium in the city of Milwaukee? *A*. I did that on the advice of my attorney.

"*Q*. And you did go there, is that true? *A*. I did.

"*Q*. You stayed only a few days? *A*. I stayed eleven days.

"*Q*. Did you stay long enough for them to make any diagnosis or give any treatment, if any was warranted? *A*. There was no treatment given me whatsoever. There were no tests made or anything.

"*Q*. You don't know whether or not any results were made from your stay in the hospital, is that correct? *A*. The doctor gave me to understand when I left that I was not suffering from any mental illness.

"*Q*. Is it my understanding the doctor gave his diagnosis of that to you? *A*. He told me that as far as he was concerned there was nothing wrong with me.

"*Q*. Fine. What is that doctor's name, Mrs. Hirmer? *A*. I can't recall it.

"*Q*. I think it is quite important. Was it Dr. Morrison? *A*. I think it was.

"*Q*. Would you be willing to waive the privilege and allow Dr. Morrison to testify in this court as to this problem? *A*. . . . no, I wouldn't."

Redirect examination by Mr. Burns reveals:

"*Q*. Mrs. Hirmer, you testified on cross-examination that you were not willing to waive the privilege as to Dr. Rosenberger's conferences? *A*. Yes, sir.

"*Q*. I want you to tell the court why you feel that way? *A*. I feel that way because we were sent there by the chancery office for the sole purpose of trying to get our difficulties straightened out."

The trial court had the opportunity to see the parties, observe their conduct, determine the credibility of the witnesses, the truth of the controversies involved, and our review of the entire record fails to disclose any abuse of discretion on the part of the trial court. *Adams v. Adams* (1922), 178 Wis. 522, 190 N. W. 359; *Hamachek v. Hamachek* (1955), 270 Wis. 194, 70 N. W. (2d) 595; and *Brown v. Brown* (1960), 9 Wis. (2d) 322, 101 N. W. (2d) 48.

The findings of the court being supported by the great weight and clear preponderance are affirmed.

*By the Court*.—Judgment and orders affirmed.

CURRIE, J. (*dissenting*). Defendant's counsel in support of his motion for a new trial filed an affidavit dated October 16, 1959, which had attached to it the letter of Dr. Andrew I. Rosenberger, a reputable psychiatrist of national renown, which letter is quoted verbatim in the majority opinion. In such letter Dr. Rosenberger stated that Mrs. Hirmer "has definite paranoid delusions toward her husband." As soon as this information came to the attention of the trial court it became his duty under the decision of this court in *Heine v. Witt* (1947), 251 Wis. 157, 28 N. W. (2d) 248, to have summoned Dr. Rosenberger as a witness and inquired into the matter of Mrs. Hirmer's sanity. In its opinion in such cited case, this court stated (p. 166) :

"Had plaintiff's attorney informed the divorce counsel or the trial judge of the claim of insanity, we have no doubt that the judge would have insisted on the psychiatrist being produced as a witness and that on his testimony being produced a divorce would have been denied and the complaint dismissed."

It appears that the former counsel for the defendant husband knew of this letter of Dr. Rosenberger at the time of the original trial, but failed to bring it to the attention of the trial court so as to make it a matter of record. Neither was the defendant's answer amended to set up the defense of insanity. In ordinary adversary proceedings this would constitute a waiver which would prevent counsel for the defendant later, after the conclusion of the trial, from making use of such letter. However, a divorce action is different from the ordinary adversary lawsuit in that the state has a substantial interest therein. Nothing that counsel for one of the parties can do will waive such interest of the state. It is the duty of the trial court at all times to see that this interest of the state is protected.

Apparently the trial court thought Dr. Rosenberger would be incompetent to testify as to Mrs. Hirmer's mental condition, if he were called as a witness, because of the privilege granted by sec. 325.21, Stats. Where the state has an interest in a proceeding, such as a divorce action, an exception should be read into sec. 325.21, to permit a physician to testify as to the mental competency of a party, where such mental competency is of interest to the state.[1] If the majority of the court is opposed to the reading into the statute of such exception, it at least should deny affirmative relief to a party in a divorce action who refuses to waive the privilege of medical testimony bearing on mental competency.

The majority opinion stresses the fact that the trial court had an opportunity to see the parties and observe their conduct. Surely, it is not intended thereby to create the impression that a trial court is competent to determine the mental condition of a person, who is suspected of harboring paranoid delusions, by merely observing such person testify in court.

I would reverse the judgment and the order denying a new trial, and remand with directions that the testimony of Dr. Rosenberger, and such other witnesses as the parties may desire to call, be taken on the issue of Mrs. Hirmer's mental competency.

---

[1] 8 Wigmore, Evidence (3d ed.), p. 812, sec. 2380a, attacks the privilege granted to physicians, of not divulging information gained from the physician-patient relationship, on the ground that the injury to justice by invoking such privilege is far greater than any harm that might result to the physician-patient relationship which might occur from abolishing the privilege.