[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is on remand from the Appellate Court, Quindazzi v.Quindazzi, 56 Conn. App. 336, 339 (2000). The remand order reads as follows:
 Under the circumstances here, we therefore must remand this matter for a new trial on all financial issues. The judgment is reversed as to the financial orders only and the case is remanded for a new trial on all financial issues.
CT Page 11535
The original dissolution of marriage in this case was entered on January 30, 1998. The rule on remand for a new trial on financial issues in dissolution proceedings as stated in Sunbury v. Sunbury, 216 Conn. 673,676 (1990) is as follows:
 The division of property and the entry of orders of alimony in dissolution proceedings are governed by General Statutes 46b-81 (a) and 46b-82. Section 46b-81
(a) provides in part: "At the time of entering a decree . . . dissolving a marriage . . . the superior court may assign to either the husband or wife all or any part of the estate of the other." (Emphasis added.) Similarly, 46b-82 provides in part: "At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other (Emphasis added.) The only temporal reference in the enabling legislation refers us to the time of the decree as controlling the entry of financial orders. It is neither unreasonable nor illogical, therefore, to conclude that the same date is to be used in determining the value of the marital assets assigned by the trial court to the parties. "In the absence of any exceptional intervening circumstances occurring in CT Page 11536 the meantime, [the] date of the granting of the divorce would be the proper time as of which to determine the value of the estate of the parties upon which to base the division of property." Brackob v. Brackob, 265 Wis. 513, 518, 61 N.W.2d 849 (1953). An increase in the value of the property following a dissolution does not constitute such an exceptional intervening circumstance.
Neither the plaintiff or the defendant claims that there have been any exceptional intervening circumstances between the date of dissolution (January 30, 1998) and the present time. Accordingly, the issue of alimony and property division is to be determined based on the statutory criteria including the financial circumstances of the parties as they existed on January 30, 1998.
The court finds the following facts as they existed on January 30, 1998. The plaintiff and the defendant were married on April 7, 1981. The parties have two children issue of this marriage: Zachary Edwin Crandell Quindazzi, born January 2, 1982; and Briana Marie Crandell Quindazzi, born February 17, 1986. The plaintiff does not have any other minor children. Neither party has received state assistance.
Commencing approximately July of 1982, the defendant began having emotional problems. He did not work most of the calendar year 1982.
The defendant again suffered some emotional problems in 1991. His present diagnosis is bipolar manic depressive. He was also committed to Four Winds in North Salem, New York in 1992. After his discharge from Four Winds, he stopped taking his prescribed Lithium. He also stopped attending counseling that had been recommend to him. He wrongfully blames the plaintiff for his depression claiming that she is responsible for his not taking his Lithium. He was again hospitalized at the Danbury Hospital in February of 1994. He then went to a Yale University facility between February and either August or September of 1994. He was then discharged to Fairfield Hills in Newtown, Connecticut, where he remained until December, 1994.
The defendant's bipolar problem is now stabilized and he is on three regular medications.
The court finds that the major reason for the cause of the breakdown of the marriage was the defendant's bipolar manic depressive condition and the affects from that condition when he did not stay on his medication.
The plaintiff was born on September 17, 1947. CT Page 11537
The plaintiff returned to college in 1986 to obtain her teacher's degree and graduated in May of 1989. Her parents paid her tuition for her to attend college. When she returned to college she already had two years of credit from previously having attended Arizona State University and Colorado University between 1965 and 1967.
When the plaintiff returned to college during the years 1986, 1987, 1988 and 1989, the only source of income was the defendant's earnings until the plaintiff graduated and obtained employment in 1989. The plaintiff also obtained a master's degree at Western Connecticut State University, having started in the summer of 1989 and obtaining her master's degree in 1992. She worked days and went to school evenings to obtain her master's degree. During the time she was attending college to get her teaching degree and her master's degree, she primarily cared for the children as well as taking care of the family home and doing food shopping.
On January 30, 1998, the plaintiff was employed as a teacher at the Carmel Central School District. Her employment runs for the contract period of September 1 through August 31 of each year. Her gross weekly contract salary for the 1997-1998 school year was $57,945. The total salary earned was $59,054. From the evidence presented, the court finds that her gross weekly income from employment was $1145.81 as of January 30, 1998. Her financial affidavit dated January 29, 1998 showed a deduction of $100 for credit union. That money was put into her credit union savings account. After deducting for FICA of $87.66 weekly, federal income tax of $107.64 weekly, and New York State income tax of $53.72 weekly, her net weekly income was $896.79. In addition, she had gross monthly income of $650 from the rental of a "in-law apartment" that was rented on a month to month basis at the family home, which amounts to $151.16 weekly. Her combined net weekly income from her salary and rental was $1047.95.
The parties own a family home located at 15 Kayview Avenue, Bethel, Connecticut. From the evidence presented, the court finds that the fair market value of that home is $172,600 and that it has a mortgage balance of $110,000 and total equity of $62,600 as of January 30, 1998. In addition, there is miscellaneous household furnishings with a value of $7500. The plaintiff also has bank accounts as of January 30, 1998 totaling $2000. She is insured with a life insurance policy in the face amount of $30,000. She has a pension plan through her employment with a total value as of January 30, 1998 of approximately $13,000. She has liabilities totaling $27,983.56. Included in those liabilities is an auto lease through Colonial Subaru and attorney's fees totaling approximately $11,043 as of January 30, 1998. Her weekly expenses including her auto CT Page 11538 lease expenses amount to $1142.44.
The parties purchased the family home located at 15 Kayview Avenue, Bethel, Connecticut, on April 27, 1984 for $119,900.
The family home was financed with a first mortgage in the face amount of $95,000 together with cash that came from the sale of property that the defendant had owned in Yulan, New York.
The defendant has been in the personnel agency business since 1964. He also tried some other businesses that were not successful. In 1996, he owned a personnel agency known as Staffing Specialists with another person. He split up his business relationship with that person, keeping the agency with the other person leaving the agency.
The defendant has also been employed in other positions including working in New York City. The defendant is entitled to V.A. hospital benefits that he uses for his bipolar disorder at no cost to him.
The defendant claims that the income that he shows on his financial affidavit dated January 12, 1998 is in excess of what his actual income was as of January 30, 1998. The court finds that claim at best is not credible. The court finds from his financial affidavit dated January 12, 1998 that his gross weekly income from his principal employment was $400 and his net weekly income was $260. The court further finds that as of January 30, 1998, that his occupation was that of a personnel manager for Personnel Services. The court further finds that as January 30, 1998, the following items were frequently paid from business funds on his behalf in addition to his $400 gross weekly income: (a) rental and mortgage $190.38 weekly; (b) electricity $23.08 weekly; (c) telephone $5.70 weekly; (d) gas/oil $23.08 weekly; (e) auto loan $76.15 weekly; (f) public transportation $4.61 weekly; and (g) automobile insurance premiums $23.08 weekly. The defendant had liabilities totaling $15,400 as of January 30, 1998. The defendant owns a 1996 Subaru with no equity. He owns clothing and household items with a value of $500. He has bank accounts totaling $500. He has an IRA-Chase with a value of $16,200 and a Merrill Lynch account with a balance $24,000. He also owns a Joe DiMaggio picture with a value of $200, and baseball bats with a value $300.
The parties entered into the following stipulation on August 17, 2000:
 The parties agree that in connection with child support, the following is agreed and understood and shall be, subject to the Court, ordered:
 1. That the current social security allotment being CT Page 11539 paid shall continue so long as such is payable under social security law ($102.23).
 2. That no other support shall be ordered payable by defendant under financial circumstances relevant on January 30, 1998 or August 17, 2000, or intervening period of time.
 3. That neither party shall seek repayment of any claimed arrearage.
The above stipulation as stated by both counsel also is intended to cover unreimbursed medical and day care expenses.
From the evidence presented, the court finds that between 1981 through 1997, the parties had the following amounts of taxable income:
 YEAR PLAINTIFF FICA DEFENDANT FICA EARNINGS EARNINGS
 1981 $13,800.00 $26,300.00 1982 0 $ 2,525.00 1983 0 $21,462.41 1984 0 $32,982.29 1985 $ 37.00 $37,263.03 1986 0 $54,250.25 1987 0 $43,800.00 1988 0 $45,000.00 1989 $ 8,858.00 $39,847.29 1990 $27,482.00 $29,234.84 1991 $30,757.00 $ 3,221.25 1992 $34,269.00 $12,401.50 1993 $41,710.00 $ 7,900.00 1994 $44,069.00 $ 4,000.00 1995 $49,303.00 $20,755.64 1996 $54,950.00 $33,779.00 1997 $50,435.00 0
TOTAL: $355,670.00 $414,641.19
The court finds that the reasonable fees incurred by Attorney Foster as counsel for minor child amounts to $1720.
This court has considered the provisions of § 46b-56 and §46b-56a regarding the issues of custody, visitation and joint custody, and has considered the provisions of § 46b-62 regarding the issues of CT Page 11540 attorney's fees, and has considered the provisions of § 46b-82
regarding the issues of alimony, and has considered the issues of provisions of § 46b-81 regarding the issues of assignment of property, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issues of support. The court enters the following orders:
 ORDERS
A. BY WAY OF ALIMONY
1. No alimony is awarded in favor of either party.
B. BY WAY OF PROPERTY ORDERS
1. The plaintiff is to pay all of the liabilities shown on her financial affidavit dated January 29, 1998 and hold the harmless.
2. The defendant is to pay all of the liabilities shown on his financial affidavit dated January 12, 1998 and hold the plaintiff harmless.
3. All of the rental income previously received by the plaintiff for the in-law apartment at the family residence is awarded to the plaintiff.
4. The defendant is ordered to quitclaim all of his right, title and interest in the family home located at 15 Kayview Avenue, Bethel, Connecticut, by October 26, 2000.
5. All of the furnishings and furniture located at the family home is awarded to the plaintiff.
6. The bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff.
7. All of the clothing and household items in the possession of the defendant is awarded to the defendant.
8. The Chase bank account shown on the defendant's financial affidavit with a balance of $500 is awarded to the defendant.
9. The IRA and Merrill Lynch accounts with a total value of $40,200 shown on the defendant's financial affidavit are awarded to the defendant.
10. The Joe DiMaggio picture and baseball bats with a total value of CT Page 11541 $500 are awarded to the defendant.
11. The 1996 Subaru motor vehicle is awarded to the defendant.
12. The plaintiff is to pay to the defendant as lump property the sum of $10,000 to be paid without interest at the rate of $400 per month commencing November 1, 2000 and monthly thereafter.
13. All of the plaintiff's interest in her pension plan is awarded to the plaintiff.
C. BY WAY OF CUSTODY, SUPPORT AND VISITATION
1. The stipulation entered into between the parties on August 17, 2000 is found by the court to be fair and equitable and in the best interests of the minor child and therefore orders are entered in accordance with that stipulation.
2. The plaintiff is entitled to claim the minor children as dependents on her federal and state income tax returns.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either the plaintiff or the defendant.
2. Each party is ordered to pay to Attorney Foster the sum of $860 by October 26, 2000.
E. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
2. In the event COBRA insurance is still available to the defendant, then the plaintiff is to cooperate with him in obtaining such coverage for the maximum period allowed by law if the defendant elects to obtain it at his sole cost and expense.
Axelrod, J.