BERTHA F. LEWIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lewis v. Commissioner
Docket No. 22160-81.
United States Tax Court
T.C. Memo 1983-770; 1983 Tax Ct. Memo LEXIS 17; 47 T.C.M. (CCH) 744; T.C.M. (RIA) 83770; December 22, 1983. Jan G. Halisky, for the petitioner. John S. Winkler and Jane T. Dickinson, for the respondent. GOFFE
*18 MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax for the taxable years as follows: Taxable
Year
Amount
1976
$151
1977
662
1978
686
The issue for decision concerns whether petitioner's receipt of payments from her former husband pursuant to their divorce decree must be included in her gross income as alimony pursuant to section 71. [1]
FINDINGS OF FACT Some of the facts have been stipulated.The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference. Petitioner was single during 1976, 1977 and 1978 and filed individual Federal income tax returns for her 1976, 1977 and 1978 taxable years. All of these returns were filed with the Internal Revenue Service in Atlanta, Georgia. Petitioner resided in Clearwater, Florida, when she filed her petition. Petitioner married Charles Lewis on October 16, 1948. Neither individual possessed any significant assets at the time of marriage and Charles Lewis was in debt at that date. Four children were *19 born to the marriage. Petitioner primarily devoted herself to raising the children and was not employed outside the household during the marriage except for a two-month period during the 1972 Christmas season. Petitioner did, however, assist her husband with his business activities to a limited extent which generally were conducted out of a home office. During her marriage, petitioner's husband was self-employed as a builder-broker in the construction business. They accumulated various real property holdings in Florida and Wisconsin during their marriage which included residential homes, undeveloped land, and rental properties consisting of duplexes, townhouses and multiple-family units. Title to such real property was held either in the name of petitioner's husband's business, Space Homes, Inc., or jointly in their individual names. Prior to 1973, petitioner and her husband resided in Wisconsin. In July, 1973, petitioner moved to Florida for health reasons and the children accompanied her there. While residing in Florida, petitioner relied upon her husband for support. Petitioner subsequently sued her husband in Wisconsin for legal separation and he, in turn, requested *20 an absolute divorce. While the divorce action was pending, petitioner continued to rely upon he husband for support and was awarded $1,000 per month beginning in October, 1974. On December 23, 1975, the presiding judge in the County Court of Walworth County, Wisconsin, entered an oral judgment of divorce. On March 15, 1976, a written decision with respect to the matters of property division, alimony and child support was entered, relevant portions of which are set forth below: This divorce action was tried to the Court December 8, 10, and 23, 1975, after which the Court awarded defendant judgment of absolute divorce on the grounds of voluntary separation for more than one year, awarded custody of the two minor children to the plaintiff and ordered child support and alimony (family support) fixed at $840 per month, effective as of January 15, 1976. * * * The undersigned has examined and re-examined the exhibits admitted into evidence, his notes of the testimony, and the briefs of the attorneys. All of these lead to one and only one conclusion: That the plaintiff would have no practical use for any of the assets in this marital estate excepting the Florida home, the contents *21 of said home, her personal clothing and effects and the family automobile, the 1971 Chevrolet. The balance of the plaintiff's share of the marital estate should, in the judgment of this Court, be made up in the form of cash. Realistically, therefore, the questions to be resolved are: (1) How much? and (2) How is it to be paid? Both parties seem to agree that a fifty-fifty division of the marital estate would be proper in this case. More precisely, the first question is: How big is the estate? * * * On the entire record, including the several net worth statements and the testimony taken, the court finds that a fair and equitable net value to place on the mardital estate is the sum of $120,000, and it should be and is hereby divided as follows: AWARDED TO THE PLAINTIFF:
The residential property located at
801 Normandy Road, Clearwater, Florida
$19,750
Furniture, furnishings and personal
effects and the 1971 Chevrolet
250
Cash award in lieu of Wisconsin property, said
award to bear simple interest at the rate of 7%
per annum computed from April 1, 1976, until
paid: said sum to be paid in equal semi-annual
instalments of $2,000 plus accrued interest every
6 months commencing July 1, 1976; and until said
award is paid in full it shall remain a lien on
LL-41, Lauderdale Lakes in Walworth County
$40,000
Total Award to Plaintiff
$60,000
*22 The remainder of the marital assets are awarded to the defendant, but subject to the liens mentioned herein. The cash award shall be impressed as a lien on the proceeds of all existing life insurance contracts on the life of defendant, said contracts to be kept in effect by the defendant without assignment or encumbrance until this cash award is fully paid. Family support shall remain at $840 per month until further ordered, except that it shall be reduced by $200 per month on and after September 23, 1977; and it shall be further reduced by $300 per month on and after May 25, 1980. On April 19, 1976, Charles Lewis filed a Motion of Modify the Decision and Judgment. On April 29, 1976, a written judgment of divorce, which implemented the oral judgment of December 23, 1975, was entered. Relevant portions of this written judgment follow: This action having been brought on for trial commencing December 8, 1975 and resuming again December 22, 1975, before the Honorable John J. Byrnes, and the Court having filed its Findings of Fact and Conclusions of Law from which it satisfactorily appears and wherein the Court finds that the defendant Charles Lewis is entitled to a Judgment *23 of Divorce, now, on motion of COOK & FRANKE, S.C. by Joan F. Kessler, plaintiff's attorney: IT IS ADJUDGED
1. That the bonds of matrimony heretofore subsisting between the plaintiff Bertha Lewis and the defendant Charles Lewis be and the same are hereby dissolved and they are forever freed from the obligations thereof, provided, that the judgment so far as it affects the marital status of the parties shall not be effective until the expiration of six months from the date of granting said judgment, towit December 23, 1975, except that it shall immediately bar them from cohabiting together and it may be reviewed on appeal during such period. But in case either party dies within said period, such judgment, unless vacated or reversed, shall be deemed to have entirely severed the marriage relation immediately before such death. 2. IT IS FURTHER ADJUDGED that neither of the parties to this action shall marry again until six months after the granting of said judgment on the 23rd day of December, 1975, and the marriage of either of the parties to this action solemnized before the expiration of six months from the date of granting of this judgment shall be null and void. 3. *24 IT IS FURTHER ADJUDGED that plaintiff shall be awarded the following property under the following terms and conditions: a. The real estate located at 801 Normandy Road, Clearwater, Florida more particularly described as follows: LOT 1, BLOCK 2, DRUID PARK SUBDIVISION, according to the Map or Plat thereof as same appears of Records in the Public Records of Pinellas County, Florida. i. Defendant shall forthwith satisfy the second mortgage on said property, which at the time of the completion of trial of this action was $3,750.00, or in lieu of paying said mortgage forthwith shall pay directly to plaintiff the sum sufficient to satisfy said mortgage. ii. Plaintiff shall assume all liability on the principal mortgage on said property which at the time of this trial was $17,250.00 and shall hold defendant harmless from any liability thereon.
b. Plaintiff shall be awarded all right, title and interest to and in her furniture, furnishings, personal effects and a 1971 Chevrolet presently in her possession, all of which have a present value of $250.00. c. Defendant shall pay to the plaintiff the sum of $40,000.00 which payment is in lieu of Wisconsin property, which shall *25 be paid under the following terms and conditions. i. This award shall bear simple interest at the rate of 7% per annum computed from April 1, 1976 until paid. ii. Payment shall be made in equal semi-annual instalments of $2,000.00 plus accured [sic] interest every 6 months commencing July 1, 1976. iii. This amount may be paid in full, with interest to the date of payment, at any time prior to the due dates set forth above.
d. Until this award is paid in full it shall remain a lien on the Lauderdale Lakes property in Walworth County owned by defendant more particularly described as follows: That portion of Lot Numbered 5 of Lauderdale Park according to the recorded plat thereof, being in the town of La Grange, Walworth County, Wisconsin, lying North of the center line of that certain private roadway established in agreement dated, acknowledged and recorded in the Office of the Register of Deeds, Walworth County, March 23, 1911 in Vol. 130 of Deeds page 542. 4. IT IS FURTHER ADJUDGED that all the rest, remainder, and other assests [sic] of the parties not particularly described above, shall be and hereby are awarded to the defendant, including jointly held property *26 in the State of Wisconsin, subject to the following terms and conditions: a.Defendant shall hold harmless plaintiff from any liability on any and all mortgages or other indebtedness, whether or not specifically relating to the property awarded to defendant, incurred by defendant or by the parties jointly during the course of the marriage. b. Plaintiff shall have a lien on the proceeds of all existing life insurance contracts on the life of defendant, which are more particularly described as follows: Company
Policy No.
Face Value
Northwestern
Mutual Life Ins.
6251399
$50,000.00
Veterans
Administration
V-7036691
5,000.00
said contracts are to be kept in full force and effect by the defendant without assignments or encumbrance of any nature whatever until the cash award to plaintiff set forth in this Judgment of Divorce is fully paid. * * * 8. IT IS FURTHER ADJUDGED that as and for family support, defendant shall pay to the plaintiff, through the office of the Clerk of Courts of this County, the sum of $840.00 per month until further ordered: a. On September 23, 1977 said sum shall be reduced to $640.00 per month. b. On May 25, 1980, said *27 sum shall be reduced to $340.00 per month. 9. IT IS FURTHER ADJUDGED that based on the entire record, including several net worth statements introduced as exhibits, and the testimony taken, I find that a fair and equitable net value of the marital estate is the sum of $120,000.00. * * * 12. IT IS FURTHER ADJUDGED that each party is specifically directed to execute any and all necessary documents or conveyances to the other party necessary to implement and carry out the judgment of divorce. On June 30, 1976, a Decision on Defendant's (Mr. Lewis') Motion to Modify Decision and Judgment was entered, portions of which are set forth herein: After further reviewing the file, and considering the arguments of counsel, this court is of the opinion and here decides that the division of property and the entire judgment should stand as entered except for the alimony aspect of the "Family support". I will and do hereby authorize entry of an order amending the judgment so as to terminate the alimony aspect of the monthly support payments ($340 per month), effective July 1, 1976. In other words, the family support shall be $500 per month from July 1, 1976 until September 23, 1977; *28 then $300 per month until May 25, 1980, at which time the family support shall terminate unless alimony is ordered in the interim for good cause shown. In other words, the court will reserve jurisdiction to award alimony upon a showing of change in circumstances. See Taake v. Taake (1975) 70 Wis. 2d 115,     N.W. 2d    . In accordance with the divorce decree, petitioner executed various quitclaim deeds to her former husband with respect to their real property holdings. The properties petitioner relinquished her interests in by this method had a value in excess of $40,000. Pursuant to the judgments and orders of the presiding court, Mr. Lewis paid petitioner $2,000,$4,000, and $4,000, in taxable years 1976, 1977, and 1978, respectively. Petitioner did not include such amounts in her gross income when filing her individual Federal income tax returns for said years. The Commissioner determined that these sums must be included in petitioner's gross income pursuant to section 71 because the payments were to be made over a period of more than 10 years from the date of her divorce decree. OPINION The only issue for decision pertains to the tax consequences *29 of petitioner's receipt of semi-annual $2,000 payments from her former husband pursuant to their divorce decree. Petitioner contends that her receipt of such payments is nontaxable because these amounts were part of their property settlement and are not includable under section 71 because they are payable over a period not exceeding 10 years from the date of her divorce decree. Respondent, on the other hand, claims such sums qualify as "periodic" payments made on account of a marital or family relationship; hance, the payments are includible in petitioner's gross income pursuant to section 71. Section 71 governs the inclusion of support payments in gross income and relevant portions thereof are set forth in the margin. [2] Section 71(a), however, applies only to payments made in recognition of the general obligation to support which is made specific by the decree. Sec. 1.71-1(b)(4), Income Tax Regs. Payments constituting a division of the marital estate, i.e., a property settlement, are capital in nature and thus not within the purview of section 71. Gammill v. Commissioner,73 T.C. 921, 926 (1980), affd. 710 F.2d 607 (10th Cir. 1982); Thompson v. Commissioner,50 T.C. 522, 525 (1968). *30 *31 The determination of the nature of the payments rests upon the surrounding facts and circumstances. Jackson v. Commissioner,54 T.C. 125, 130 (1970); Newbury v. Commissioner,46 T.C. 690, 694 (1966). An important factor to consider is the intent of the parties. Schottenstein v. Commissioner,75 T.C. 451, 456 (1980). Labels assigned to the payments by the parties in their agreement or by the court in the divorce decree are not conclusive. Gammill v. Commissioner,supra at 926. Given that the Commissioner determined that petitioner must include the semi-annual $2,000 payments from her former husband in her gross income pursuant to section 71, petitioner has the burden of proving that they are not properly includible in her gross income. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
A literal reading of section 71(a)(1) establishes three general conditions for a taxpayer's inclusion of payments from the former spouse in gross income: (1) the payments must be "periodic" (whether or not made at regular intervals); (2) the sums must be *32 in discharge of a legal obligation arising from the marital or family relationship; and (3) the amounts must be paid pursuant to the divorce decree or attendant written instrument. The parties do not dispute that the immediate payments were made pursuant to petitioner's divorce decree. With respect to whether the subject payments are "periodic" for the purposes of section 71(a), section 71(c)(1) generally provides that installment payments discharging part of an obligation, the principal sum of which is specified in the divorce decree, instrument, or agreement, shall not be treated as "periodic" payments. Section 71(c)(2), however, provides that if this principal sum may be paid over a period of more than 10 years from the date of the decree, instrument, or agreement, then the installment payments shall be treated as "periodic" payments for subsection (a), but only to the extent of 10 percent of the principal sum. The Parties agree that the subject payments are wholly within this 10 percent limitation. The parties disagree whether the installment payments discharging the principal sum may be paid over a period ending more than 10 years from the date of the divorce decree. Petitioner *33 contends that the date the judge formally entered a written judgment, namely April 29, 1976, is the date of her decree and that her former husband's last payment is due January 1, 1986.Therefore, petitioner claims that the subject payments are not payable over a period more than 10 years from the date of her decree; hence, the payments are not "periodic" pursuant to section 71(c). Respondent contends that the date the presiding judge orally announced his decision at the conclusion of the trial, December 23, 1975, is the date of the decree. Therefore, since petitioner's former husband may make his last installment payment on January 1, 1986, respondent claims that the period over which such payments may be made extends beyond 10 years from the date of the decree; thus, the payments are "periodic" for section 71 purposes. The date of petitioner's divorce decree is a question of state law; hence, the law of the State of Wisconsin is controlling. Wisconsin courts have consistently held that the date the presiding judge orally renders his decision from the bench is the effective date of the divorce. Holschbach v. Holschbach,30 Wis. 2d 366, 141 N.W. 2d 214 (1966); *34 Brackob v. Brackob,265 Wis. 513, 61 N.W. 2d 849 (1953). Further, the presiding judge in petitioner's divorce proceedings referred to the cral bench decree of December 23, 1975, as the date of judgment in the formal judgment which was entered on April 29, 1976. Finally, we have previously addressed the identical issue in Wright v. Commissioner,62 T.C. 377 (1974), affd. 543 F.2d 593 (7th Cir. 1976), and held that the date of the oral bench decree in Wisconsin divorce proceedings is the date of decree for section 71 purposes. Accordingly, since the date of petitioner's divorce decree is December 2o, 1975, and petitioner's former husband may make his final installment payment on January 1, 1986, the period over which such payments may be made extends beyond 10 years from the date of the decree; hence, the subject payments must be deemed "periodic" pursuant to section 71(c)(2). The remaining consideration pertaining to whether petitioner must include the subject payments in her gross income pursuant to section 71 concerns whether her receipt of such sums is in discharge of a legal obligation arising out of a marital or family relationship. *35 That the subject payments are considered "periodic" for the purposes of section 71(a) is not determinative. To warrant their inclusion in petitioner's gross income, the subject payments must be both "periodic" and in discharge of a legal obligation arising out of a marital or famnily relationship. Lambros v. Commissioner,459 F.2d 69, 71 (6th Cir. 1972), affg. a Memorandum Opinion of this Court; McCombs v. Commissioner,397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court; United States v. Mills,372 F.2d 693 (10th Cir. 1966); Adam v. United States,429 F. Supp. 38, 41 (D. Wyo. 1977). Payments which are "periodic" yet in division of a marital estate are not includible in gross income pursuant to section 71. Gammill v. Commissioner,73 T.C. 921 (1980), affd. 710 F.2d 607 (10th Cir. 1982). After reviewing all of the evidence presented and examining the circumstances under which petitioner received these semiannual $2,000 payments, we conclude that she has met her burden of proof and demonstrated that such amounts constitute a division of the marital estate, which *36 prevents their inclusion in her gross income pursuant to section 71. We base this conclusion upon the cumulative effect of the following factors: the payments were part of a fixed sum, McCombs v. Commissioner,supra at 7; such amounts were to be paid over a definite time period, Nathan v. Commissioner,19 T.C. 865, 872 (1953); the non-terminability of the payments upon the death or remarriage of petitioner, Sydnes v. Commissioner,68 T.C. 170, 177 (1977), affd. on this issue 577 F.2d 60, 61 (8th Cir. 1978); the amounts were secired by both life insurance and a lien on real property, Gammill v. Commissioner,supra at 929; the principal sum to be paid to petitioner accrued interest during the repayment term and constituted approximately one-half of the property accumulated by the husband and wife during their marriage, Lambros v. Commissioner,supra at 72; the semi-annual payments did not vary despite the fact that petitioner's needs might vary nor were the payments conditioned in any manner upon petitioner's subsequent earnings, Sydnes v. Commissioner,supra at 177; *37 and the divorce decree (as modified by the court's order on petitioner's former husband's Motion to Modify Decision and Judgment) specifically provided that petitioner was not entitled to alimony, therefore, it was more indicative of a property settlement. Sydnes v. Commissioner,supra at 177. We are mindful of cases holding that for the payment in issue to constitute a property settlement, petitioner must have had rights to property which she relinquished in exchange for the payments. Schottenstein v. Commissioner,75 T.C. 451 (1980); Hesse v. Commissioner,60 T.C. 685 (1973), affd. without published opinion 511 F.2d 1393 (3rd Cir. 1975), cert. denied 423 U.S. 834 (1975). In Wright v. Commissioner,62 T.C. 377, 391 (1974), affd. 543 F.2d 593 (7th Cir. 1976), we reviewed Wisconsin law pertaining to a wife's inchoate rights in her husband's property and, relying on United States v. Davis,370 U.S. 65 (1962), held that such rights do not reach the dignity of an interest which would support a division of property among co-owners. On appeal, however, the Court *38 of Appeals for the Seventh Circuit took exception to our conclusion and stated that: To the extent that the court held that surrender of inchoate rights cannot support a division of property, we disagree. Where the record clearly shows that the parties so intended the payments for this purpose, surrender of a wife's inchoate rights in exchange for a lump sum payment, to be made in installments over a number of years, might well preclude a finding that the payments were made in pursuance of the husband's obligation of support. The intention of the parties is the principal determinant. [543 F.2d at 598.] Applying the Court's holding that the parties' intentions are the principal determinant, we note that the presiding judge at petitioner's divorce proceedings specifically stated in his March 15, 1976, written decision that "[b]oth parties seem to agree that a fifty-fifty division of the marital estate would be proper in this case." The presiding judge found the net value of the marital estate to be $120,000. He awarded petitioner a total of $60,000 which was to be partially satisfied by the subject payments. Therefore, it is clear that the parties intended the *39 subject payments to constitute a division of their marital estate.
We also note that some of the real property acquired by petitioner and her ex-husband during their marriage was held jointly. Pursuant to the divorce decree and in furtherance of the parties' property settlement, petitioner executed various quitclaim deeds to her husband with respect to such real property. The net fair market value of such jointly held property exceeded $40,000. Such acts clearly constitute a relinquishment of existing property interests which would support subsequent property settlement payments. Further, the Wisconsin Supreme Court, in an exhaustive and detailed analysis of the relevant factors to consider in a property division incident to divorce, stated in Lacey v. Lacey,45 Wis. 2d 378, 173 N.W. 2d 142, 144-145 (1970), that: The division of the property of the divorced parties rests upon the concept of marriage as as shared enterprise or joint undertaking. It is literally a partnership, although a partnership in which contributions and equities of the partners may and do differ from individual case to individual case. In a brief marriage, particularly as to property which *40 the husband brought to the marriage, one-third to the wife may be too liberal an allowance. In a long marriage, particularly as to property acquired by the parties during the marriage, a fifty-fifty division may well represent the mutuality of the enterprise. In determining the proportion of contribution by husband and by wife in the acquisition of property, more than economic factors are involved. We do not deal with two people with no more in common that [sic] two strangers or business associates. The contribution of a full-time homemaker-housewife to the marriage may well be greater or at least as great as those of the wife required by circumstances or electing by preference to seek and secure outside employment. In the instant case, petitioner was married for 28 years prior to her divorce and neither individual possessed any material assets at the time of marriage. Therefore, an equal division of the marital estate is entirely consistent with Wisconsin law. Based upon the preceding discussions concerning petitioner's actual interests in the property, she has demonstrated that she possessed sufficient interests to support a division of property among co-owners. Wright v. Commissioner,supra; *41 Lacey v. Lacey, supra.
Respondent argues that the amount of petitioner's pre-divorce support payments, which were $1,000 per month, approximated the sum of all of the former husband's payments to petitioner subsequent to the divorce (subject to minor discrepancies accompanying the termination of child support upon their reaching the age of majority). Such a similarity is indicative that the post-divorce payments are in the nature of support and not property settlement. Nathan v. Commissioner,19 T.C. 865, 871 (1953). We note, however, that no single factor is determinative and that a balancing of all of the competing factors is necessary. Wright v. Commissioner,supra at 598-599.
Finally, we note that we have previously examined whether a former husband's payments to his wife pursuant to a Wisconsin divorce decree must be included in the wife's income in Wright v. Commissioner,supra.There, the payments were "periodic" in that they spanned a period in excess of 10 years but were not contingent upon her death or remarriage. The payments also were party of a fixed sum and were secured. We found, however, that the *42 wife must include the payments in income pursuant to section 71(a) because she did not possess any property interests under Wisconsin law which she could relinquish in exchange for the subject payments. 62 T.C. at 390. Upon appeal, our judgment was affirmed although the appellate tribunal deemed "this is a close and difficult case" and specifically disagreed with our inchoate right and property interest analysis and stated that the parties' intentions would be determinative on this factor. 543 F.2d at 598. After reviewing all of the evidence presented, we conclude that Wright is factually distinguishable based upon the totality of factors indicating that the immediate semi-annual $2,000 payments constituted a division of the marital estate. [3] The parties' intended that a fifty-fifty division of the marital estate be made; petitioner had sufficient property interests which she relinquished in return for installment payments on the property settlement; and the cumulative effect of circumstances surrounding the subject payments were generally indicative of a division of a marital estate. [4]
*43 Given that each case must be decided upon its own facts and circumstances, Gammill v. Commissioner,73 T.C. 921, 926 (1980), affd. 710 F.2d 607 (10th Cir. 1982); Jackson v. Commissioner,54 T.C. 125, 130 (1970); a balancing of the competing factors in the instant case warrants a conclusion that the payments, although "periodic," were a division of the marital estate. Therefore, petitioner need not include these semi-annual $2,000 payments in her gross income pursuant to section 71. Gammill v. Commissioner,supra.
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. (a) GENERAL RULE.-- (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * * (c) PRINCIPAL SUM PAID IN INSTALLMENTS.-- (1) GENERAL RULE.--For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.--If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.↩
3. Accordingly, we need not decide, under the circumstances, however, whether the relinquishment of any inchoate rights could support a division of property.See Goninen v. Commissioner,T.C. Memo. 1983-769↩, filed this day. 4. For the same reasons, Graham v. Commissioner,T.C. Memo. 1981-692↩, which involved payments subsequent to a Wisconsin divorce, is also distinguishable.